# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| ORTHOSIE SYSTEMS, LLC, | § | |
| | § | |
| v. | § | Civil Action No. 4:16-CV-873 |
| | § | Judge Mazzant |
| ACTSOFT, INC. | § | |
| | § | |

## CLAIM CONSTRUCTION MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff Orthosie Systems, LLC's ("Orthosie's") Opening Claim Construction Brief (Dkt. #48), Defendant Actsoft, Inc.'s ("Actsoft's") Responsive Claim Construction Brief (Dkt. #54), and Plaintiff's Reply Claim Construction Brief (Dkt. #55). Also before the Court are the parties' July 6, 2017 Joint Claim Construction Statement Per P.R. 4-3 (Dkt. #43) and the parties' September 18, 2017 Joint Claim Construction Statement Per P.R. 4-5(d) (Dkt. #56). The Court held a claim construction hearing on September 26, 2017, to determine the proper construction of the disputed claim terms in United States Patent No. 7,430,471 ("the '471 Patent").

The Court issues this Claim Construction Memorandum Opinion and Order and hereby incorporates-by-reference the claim construction hearing and transcript as well as the demonstrative slides presented by the parties during the hearing. For the following reasons, the Court provides the constructions set forth below.

## BACKGROUND

Plaintiff brings suit alleging infringement of the '471 Patent. The '471 Patent, titled "Method and System for Monitoring a Vehicle," issued on September 30, 2008, and bears an earliest priority date of October 25, 2004. The Abstract of the '471 Patent states:

A method for monitoring a vehicle includes detecting movement or activation of the vehicle, transmitting a signal indicating movement or activation of the vehicle, to a control center, transmitting any received operator identification information to the control center, and determining whether an operator identification was received within a time interval of the detected movement or activation of the vehicle.

Defendant submits that Plaintiff has asserted Claims 1, 3, 4, 12, 15, 17, 18, and 26 of the '471 Patent. (Dkt. #54 at p. 1).

## LEGAL STANDARDS

Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995). The purpose of claim construction is to resolve the meanings and technical scope of claim terms. *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). When the parties dispute the scope of a claim term, "it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court examines a patent's intrinsic evidence to define the patented invention's scope. *Id.* at 1313–14; *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Intrinsic evidence includes the claims, the rest of the specification, and the prosecution history. *Phillips*, 415 F.3d at 1312–13; *Bell Atl. Network Servs.*, 262 F.3d at 1267. The Court gives claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

Claim language guides the Court's construction of claim terms. *Phillips*, 415 F.3d at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally

used consistently throughout the patent." *Id.* Differences among claims, such as additional limitations in dependent claims, can provide further guidance. *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* at 1315 (quoting *Markman*, 52 F.3d at 979). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex. Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). In the specification, a patentee may define his own terms, give a claim term a different meaning than it would otherwise possess, or disclaim or disavow some claim scope. *Phillips*, 415 F.3d at 1316. Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer. *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343–44 (Fed. Cir. 2001). This presumption does not arise when the patentee acts as his own lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct.'" *Globetrotter Software, Inc. v. Elan Comput. Grp. Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics*, 90 F.3d at 1583). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant*

*v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *accord Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent. *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent"). The well-established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). "Indeed, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed. Cir. 1988) (quotation omitted). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g*, 334 F.3d at 1324. However, the prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance. *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002). Statements will constitute disclaimer of scope only if they are "clear and unmistakable statements of disavowal." *See Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1358 (Fed. Cir. 2003). An "ambiguous disavowal" will not suffice. *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1285 (Fed. Cir. 2010) (citation omitted).

Although "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (quotation omitted). Technical dictionaries and treatises

may help the Court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent. *Id.* at 1318. Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## ANALYSIS

### *Agreed Claim Terms*

The parties submitted the following agreement in their July 6, 2017 Joint Claim Construction Statement Per P.R. 4-3 (Dkt. #43), which the Court adopts as agreed-upon:

| Term | Agreed Construction |
|---|---|
| "activation of the vehicle" | "opening, operating, turning on, or unlocking any component of the vehicle" |

(Dkt. #43 at p. 1; Dkt. #54 at p. 2; Dkt. #56, Exhibit A at p. 2).

### *Disputed Claim Terms*

**A. "received operator identification information" (Claims 1 and 15)**

| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
|---|---|
| "received operator identification information" | "information identifying the operator of a vehicle, which information is received by a monitoring system on or in the vehicle" |

(Dkt. #43, Exhibit A at p. 1; Dkt. #48 at p. 6; Dkt. #54 at pp. 4, 22; Dkt. #55 at p. 5; Dkt. #56, Exhibit A at p. 4).

### 1. The Parties' Positions

Plaintiff argues that, based on disclosures in the specification, "[a] proper construction of 'received operator identification information' must . . . comprehend *both* information received by a system at the vehicle *and* information received by mechanisms separate or independent of the vehicle." (Dkt. #48 at p. 7). Plaintiff also argues that Defendant's proposal "merely adds passive-voice surplus that muddles – not clarifies – the disputed term." (Dkt. #48 at p. 7).

Defendant responds that "[i]t is not clear from the term itself, in the context of the claims, *what* received the 'operator identification information' *or where* such 'operator identification information' was received." (Dkt. #54 at p. 4). Defendant argues that its proposal is supported by the specification as well as by the context in which the disputed term appears in the claims. (Dkt. #54 at p. 5).

Plaintiff replies that because the claim recites "any" received operator identification information, "[t]he use of 'any' [rather than 'the'] indicates the possibility of a variety of sources, as well as a variety of information types – a broader construction than that proposed by the Defendant." (Dkt. #55 at p. 6). Plaintiff argues that "[p]roper construction of 'received operator identification information' must . . . comprehend *both* information received by a system at the vehicle *and* information received by mechanisms separate or independent of the vehicle." (Dkt. #55 at p. 6).

At the September 26, 2017 hearing, Plaintiff argued that Defendant's proposal would improperly exclude the "key check-out" embodiment disclosed in the specification. *See* '471 Patent at 4:4–14. Defendant responded that this embodiment, cited by Plaintiff, is not covered by the claims at issue because whereas this embodiment discloses checking out a key *at* the control center, Claims 1 and 15 recite transmitting received operator identification information *to* the

control center.  Defendant also argued that this disclosed embodiment is incomprehensible because, for example, the disclosure contains an unmatched parenthesis.

**2. Analysis**

Claim 1 of the '471 Patent recites:

> **1.** A method for monitoring a vehicle, comprising:
> detecting movement or activation of the vehicle;
> transmitting a signal indicating movement or activation of the vehicle, to a control center;
> transmitting any *received operator identification information* to the control center;
> determining whether an operator identification was received within a time interval of the detected movement or activation of the vehicle;
> detecting at the vehicle the presence of a landmark; and
> transmitting data identifying the landmark and/or a location of the landmark to the control center.

'471 Patent at 6:18–29 (emphasis added).

The recital of "transmitting any received operator identification information *to* the control center" implies that the operator identification information was received somewhere other than the control center.  Defendant's proposed construction, however, goes much farther by requiring that the information is "received by a monitoring system *on or in* the vehicle."

Defendant has not adequately supported such a narrow construction.  On the contrary, the specification appears to contemplate that operator identification information could be received by a system that is outside of the vehicle:

> In another exemplary embodiment, an operator checks out a key for control systems of the monitoring system and/or the vehicle in a fashion made known to the control center (e.g., via the same mechanisms used by the monitoring system on or in the vehicle to receive or detect identification information of the operator but *located separately and/or operating independently of the vehicle*.  Thus, when the checked outkey [*sic*] is used to access and/or operate the vehicle, operation of the vehicle by the operator is presumed to be correct and authorized to use the vehicle.

'471 Patent at 4:4–14 (emphasis added).

As a threshold matter, Defendant argued at the September 26, 2017 hearing that this disclosure is incomprehensible because of the presence of an unmatched parenthesis. Although this indeed appears to be a typographical error, a fair reading is that either the apparently errant parenthesis can be ignored or, alternatively, it can be presumed that a closing parenthesis should appear at the end of the sentence. In either case, Defendant has not persuasively demonstrated that this error renders the passage incomprehensible.

Defendant also argues that this passage from the specification "sheds little, if any, light at all on the meaning of the claim term 'received operator identification information'" because this passage "does not disclose what receives 'operator information,' where such information is received, or the mechanism by which it is received." (Dkt. #54 at p. 6). Regardless of whether such disclosures are present or not, however, the above-reproduced passage explains that the mechanisms disclosed as being used by a monitoring system on or in a vehicle can alternatively be "*located separately* and/or operat[ed] independently of the vehicle." *See* '471 Patent at 4:4–14 (emphasis added).

Finally, as to Defendant's argument at the September 26, 2017 hearing that the above-reproduced disclosed embodiment is expressly excluded by the claims, Defendant's argument appears to assume that this passage from the specification discloses checking out a key *at* the control center. Therefore, Defendant has urged, this disclosure is inconsistent with the recital in the claims of transmitting *to* the control center. However, this passage discloses merely that the checking out of a key is "*made known* to the control center." *Id.* at 4:7 (emphasis added). As a result, Defendant has not shown any inconsistency between this disclosure and the claims at issue.

On balance, the above-reproduced disclosure demonstrates that a "monitoring system on or in the vehicle" is merely one embodiment that, accordingly, should not be imported into the

construction. *See Constant*, 848 F.2d at 1571; *see also Phillips*, 415 F.3d at 1323. The Court therefore expressly rejects Defendant's proposed construction.

The Court accordingly construes **"received operator identification information"** to mean **"received information identifying the operator of a vehicle."**

### B. "received within a time interval" (Claims 1 and 15)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| "received within a time interval" | "received within a predetermined time period" |

(Dkt. #43, Exhibit A at p. 2; Dkt. #48 at p. 8; Dkt. #54 at pp. 7, 22; Dkt. #55 at p. 7; Dkt. #56, Exhibit A at p. 5).

### 1. The Parties' Positions

Plaintiff argues that "[t]he dispute for this term stems from defendant's improper attempt to read specific and unnecessary limitations from the specification into the term, and the fact that defendant's proposal merely rewords the term without clarifying it." (Dkt. #48 at p. 8). Plaintiff urges that "there is no logical reason to assume or believe that a person skilled in the field of the invention would look at the '471 patent – with its multiple references to 'time interval' – and be confused, but then somehow have that confusion resolved by 'time period.'" (Dkt. #48 at p. 9). "Furthermore," Plaintiff argues, "the examples from the specification generally refer to 'time interval' and 'time constraints' in a broader context, while references to 'predetermined time interval' appear in the context of specific examples." (Dkt. #48 at p. 9).

Defendant responds that its proposal properly "clarifies that 'a time interval' is not an open-ended time period, but rather a time of particular duration determined in advance." (Dkt. #54 at p. 8). Defendant argues that its proposed construction "is explicitly supported by the intrinsic evidence of the '471 Patent specification." (Dkt. #54 at p. 8) (citing '471 Patent at 2:26–39, 3:53–

61, 4:20–29).  Defendant emphasizes that "[*a*]*ll* the examples of 'time intervals' in the specification are *predetermined* time periods."  (Dkt. #54 at p. 9).

Plaintiff replies that "there are a number of non-'predetermined' time intervals that could fall within the scope of this term – leading to the proper conclusion that this term should be broadly construed to comprehend time intervals that are not predetermined as well as those that are."  (Dkt. #55 at p. 7).

**2.  Analysis**

The parties appear to essentially agree that the following disclosures in the specification are relevant to this disputed term:

> From block 108, control proceeds to block 110, where a determination is made (for example, by the control center) whether an operator identification was received by the monitoring system within a *time interval* of detected movement, detected activation of the vehicle, or other detected tampering or action to the vehicle.  The *time interval* can include a *predetermined* time radius extending before and after the detection, can be a *time interval* prior to the detection, and/or can be a *time interval* following detection of the movement, activation or tampering.  For example, the *time interval* can a [*sic*, can be a] one minute interval straddling the detection, a one minute interval immediately proceeding [*sic*, preceding] the detection, or a one minute interval following a detection, for example, a first detection within a larger *time interval*.  From block 110, control proceeds to block 112 where a determination is made whether a received operator identification is in fact a valid identification.  For example, "validity" can be based on whether the identification is known to the control center, whether the identification is current, whether the identification is associated with a class of users who have authority or permission to use the vehicle and so forth.

> From block 112, control proceeds to block 114 where an alarm condition is set in a case where a valid operator identification was not received within the *time interval*.  The determinations of blocks 110 and 112, as well as the setting of an alarm condition, can be performed variously in one or more of a monitoring system installed in the vehicle, and the control center that communicates with the on-vehicle or in-vehicle monitoring system.

> * * *

> Thus, exemplary monitoring systems and/or methods allow a particular operator to be associated with a particular vehicle, and also allow the control center to become

aware of unauthorized usage of the vehicle, for example when the vehicle is operated and a (valid) operator identification has not been received, has not been received within acceptable *time constraints*, or is otherwise unacceptable and thus merits an alarm or warning to be raised to or by the control center, so that responsive or corrective action can be initiated.

\* \* \*

In any event where the control center receives an indication that the vehicle has been activated or tampered with, and the control center does not receive valid operator identification information compliant with predetermined restrictions (e.g., *within a predetermined time interval of the activation*) then the control center can conclude that use of action upon the vehicle is unauthorized and corrective action should be taken, for example by alerting a user or operator of the control center, alerting law enforcement officials or agencies, and so forth.

'471 Patent at 2:29–54, 3:53–61, 4:20–29.

The third above-reproduced passage refers to whether information is received "within a predetermined time interval of the activation." *Id.* at 4:24–25. Likewise, the first above-reproduced passage states that "[t]he time interval can include a predetermined time radius extending before and after the detection." *Id.* at 2:31–33. These explicit disclosures of "predetermined" suggest that a "time interval" is not necessarily "predetermined." *Cf. Phillips*, 415 F.3d at 1314 ("the claim in this case refers to 'steel baffles,' which strongly implies that the term 'baffles' does not inherently mean objects made of steel").

Defendant has also argued that dependent Claims 3 and 17 demonstrate that the "time interval" must be predetermined because otherwise there would be no way to determine when the recited alarm should trigger. (Dkt. #54 at p. 9). Defendant further clarified at the September 26, 2017 hearing that Defendant's proposal of "predetermined" means determined in advance of performing the recited method steps. Plaintiff responded that Defendant is presenting a false dichotomy in this regard because time intervals are not necessarily only either predetermined or indeterminate.

On balance, Claims 3 and 17 do not recite or imply any limitation that would require the time interval to be determined before any method step is performed. Defendant has argued that such an interpretation is necessary for operability, but Defendant has not made an adequate showing in this regard. For example, Defendant has not demonstrated that the time interval could not be determined "on-the-fly," so to speak, such that the time interval could be adjusted based on events that occur during operation.

The Court therefore expressly rejects Defendant's proposed construction. No further construction is necessary. *See U.S. Surgical*, 103 F.3d at 1568 ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy."); *see also O2 Micro*, 521 F.3d at 1362 ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims."); *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015).

The Court accordingly construes **"received within a time interval"** to have its **plain meaning**.

### C. "detecting at the vehicle the presence of a landmark" (Claim 1)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "detecting at the vehicle a landmark within a predetermined distance"[1] | "detecting, by a monitoring system on or in the vehicle, that a landmark is within a predetermined distance from the vehicle" |

---

[1] In the parties' September 18, 2017 Joint Claim Construction Statement Per P.R. 4-5(d), Plaintiff's proposal for this disputed term is listed as "detecting at the vehicle the presence of a landmark." (Dkt. #56, Exhibit A at p. 6). At the September 26, 2017 hearing, however, Plaintiff confirmed that it is still advancing the construction that Plaintiff proposed in the parties' July 6, 2017 Joint Claim Construction Statement Per P.R. 4-3 (*see* Dkt. #43, Exhibit A at p. 2) and Plaintiff's opening brief (*see* Dkt. #48 at p. 11).

(Dkt. #43, Exhibit A at p. 2; Dkt. #48 at p. 11; Dkt. #54 at pp. 10, 22; Dkt. #55 at p. 8; Dkt. #56, Exhibit A at p. 6).

### 1. The Parties' Positions

Plaintiff argues that "defendant's proposal adds unnecessary and limiting language that does nothing to clarify the disputed term." (Dkt. #48 at p. 11). Plaintiff also submits that "[i]f 'the presence of a landmark' requires clarification, then 'a landmark within a predetermined distance' is the construction that is most consistent with the specification and the original claim language." (Dkt. #48 at p. 12). Further, Plaintiff argues, Defendant's proposal "inserts unnecessary passive voice language that does nothing to meaningfully clarify the term." (Dkt. #48 at p. 12).

Defendant responds that "[w]ithout clarification of the what, where, and when of the claimed detecting, step [E] of claim 1 is hopelessly indefinite." (Dkt. #54 at p. 11). Defendant argues that its proposed construction is "explicitly supported by the intrinsic evidence of the '471 Patent specification." (Dkt. #54 at p. 11) (citing '471 Patent at 3:9–21).

Plaintiff replies that "[t]he 'on or in' limitation [proposed by Defendant] precludes a large number of possible embodiments that would otherwise satisfy the original 'at the vehicle' limitation." (Dkt. #55 at p. 9).

At the September 26, 2017 hearing, Defendant reiterated its argument that clarification is required as to what is doing the recited detecting.

### 2. Analysis

Claim 1 of the '471 Patent recites:

**1.** A method for monitoring a vehicle, comprising:
>  detecting movement or activation of the vehicle;
>  transmitting a signal indicating movement or activation of the vehicle, to a control center;
>  transmitting any received operator identification information to the control center;

> determining whether an operator identification was received within a time interval of the detected movement or activation of the vehicle;
>
> *detecting at the vehicle the presence of a landmark*; and
>
> transmitting data identifying the landmark and/or a location of the landmark to the control center.

'471 Patent at 6:18–29 (emphasis added).

The disputed term itself refers to "detecting *at* the vehicle." Nonetheless, Defendant's proposal of "on or in" is narrower than "at." Admittedly, the specification discloses an embodiment in which a "parking stall will provide location and/or identification information of the parking stall to the monitoring system *on or in* the vehicle." '471 Patent at 3:17–19 (emphasis added). Nonetheless, this is merely one embodiment that, accordingly, should not be imported into the construction. *See Constant*, 848 F.2d at 1571; *see also Phillips*, 415 F.3d at 1323. Likewise, Defendant's proposal of requiring a "monitoring system" lacks support in the claim language, and such a limitation should not be imported from the specification. *See id.*

At the September 26, 2017 hearing, Defendant urged that Plaintiff's opening brief conceded that the detecting is done by a monitoring system on or in the vehicle. Plaintiff responded that no such concession appears in Plaintiff's opening brief, and the Court finds none in Plaintiff's opening brief, Plaintiff's overview of the technology, or in Plaintiff's discussion of the present disputed term. (*See, e.g.,* Dkt. #48 at p. 2 ("The system of the '471 patent detects movement or activation of a vehicle via a monitoring system installed at the vehicle."); Dkt. #48 at p. 12 ("The act of detecting is performed at the vehicle.")).

As to Defendant's proposal of the landmark being within a predetermined distance "from the vehicle," Defendant's proposal in this regard is appropriate based on the context of the disputed term as a whole. *See Phillips*, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges,

and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."); *see also TQP Dev., LLC v. Merrill Lynch & Co., Inc.*, No. 2:08-CV-471, 2012 WL 1940849, at *2 (E.D. Tex. May 29, 2012) (Bryson, J.) ("some construction of the disputed claim language will assist the jury to understand the claims"). At the September 26, 2017 hearing, Plaintiff maintained that Defendant's proposal of "from the vehicle" is superfluous, but Plaintiff did not otherwise appear to have any substantive disagreement with this interpretation. Plaintiff has stated: "If the act of 'detecting' is being performed at the vehicle, then context dictates that 'within a predetermined distance' is in reference to the vehicle also." (Dkt. #48 at p. 12).

The Court therefore construes **"detecting at the vehicle the presence of a landmark"** to mean **"detecting at the vehicle that a landmark is within a predetermined distance from the vehicle."**

### D. "an operator identification was not received within the time interval" (Claims 3 and 17)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "an operator identification was not received within the time interval" | "information identifying the operator of a vehicle was not received by a monitoring system on or in the vehicle within a predetermined period of time" |

(Dkt. #43, Exhibit A at p. 2; Dkt. #48 at p. 13; Dkt. #54 at pp. 12–13, 22; Dkt. #55 at p. 9; Dkt. #56, Exhibit A at p. 8).

### 1. The Parties' Positions

Plaintiff submits that "[t]he dispute here duplicates the arguments already presented for the first and second disputed terms [('received operator identification information' and 'received within a time interval')]." (Dkt. #48 at p. 13; *see* Dkt. #55 at p. 6).

Defendant similarly submits that this term "requires construction for the same reasons that the terms 'received operator identification information' and 'received within a time interval' require construction." (Dkt. #54 at p. 13).

Likewise, at the September 26, 2017 hearing, the parties agreed that no separate argument was needed as to this disputed term.

### 2. Analysis

For substantially the same reasons set forth above as to the terms "received operator identification information" and "received within a time interval," the Court construes **"an operator identification was not received within the time interval"** to mean **"information identifying an operator of the vehicle was not received within the time interval."**

### E. "transmitting location coordinates" (Claims 4 and 18)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "transmitting location coordinates" | "sending, via the monitoring system in, on, or near the vehicle, location coordinates"<br><br>Alternatively:<br>    "transmitting, via the monitoring system in, on, or near the vehicle, location coordinates" |

(Dkt. #43, Exhibit A at p. 3; Dkt. #48 at p. 14; Dkt. #54 at pp. 14, 15, 22; Dkt. #55 at p. 10; Dkt. #56, Exhibit A at p. 9).

### 1. The Parties' Positions

Plaintiff argues: "The dispute for this term stems, once again, from defendant's improper attempt to read unnecessary limitations from the specification into the term, and the fact that defendant's proposal passively and improperly rewords the term without clarifying it." (Dkt. #48

at p. 14).  For example, Plaintiff argues that "[t]ransmitting is broader than merely sending."  (Dkt. #48 at p. 14) (citing '471 Patent at 2:55–65).

Defendant responds: "The use of 'transmitting location coordinates,' in the context of the claim, does not identify *what* is doing the transmitting or *where* the thing doing the transmitting is located.  Without clarifying the what and the where of the transmitting step, the scope of claims 4 and 18 is indefinite."  (Dkt. #54 at p. 14).  Defendant argues that its proposed construction "finds explicit intrinsic support in the '471 Patent specification."  (Dkt. #54 at p. 15) (citing '471 Patent at 2:55–57).  Finally, as to Plaintiff's argument that "transmitting" is broader than "sending," Defendant alternatively "agrees to use 'transmitting' in the construction of this claim term."  (Dkt. #54 at p. 15).

Plaintiff replies that Defendant's alternative proposal is "surplusage accomplishing nothing in the way of clarification for one skilled in the art."  (Dkt. #55 at p. 11).

At the September 26, 2017 hearing, Defendant further argued that the transmitting must be performed by the disclosed monitoring system because otherwise the claims would ensnare old prior art involving, for example, a person reading coordinates and calling them in (using some form of wireless communication).

## 2. Analysis

Claim 4 of the '471 Patent, for example, depends from Claim 3, which in turn depends from Claim 1.  Claims 1, 3, and 4 of the '471 Patent recite:

> **1.** A method for monitoring a vehicle, comprising:
> detecting movement or activation of the vehicle;
> transmitting a signal indicating movement or activation of the vehicle, to a control center;
> transmitting any received operator identification information to the control center;
> determining whether an operator identification was received within a time interval of the detected movement or activation of the vehicle;

detecting at the vehicle the presence of a landmark; and

transmitting data identifying the landmark and/or a location of the landmark to the control center.

\* \* \*

**3.** The method of claim 1, comprising:

setting an alarm condition when the determining indicates that an operator identification was not received within the time interval.

**4.** The method of claim **3**, comprising:

*transmitting location coordinates* of the vehicle provided by a Global Positioning System receiver co-located with the vehicle.

'471 Patent at 6:18–30, 39–45 (emphasis added).

The specification discloses that a monitoring system can transmit location information, such as geographic coordinates, or a signal itself can be used to triangulate a location:

From block 114, control proceeds to block 116, where *the monitoring system transmits location information* of the vehicle to the control center. From block 116, control proceeds to block 118, where a location of the vehicle is determined based on the transmitted location information. In a case where *the transmitted location information includes geographic coordinates provided by a global positioning system (GPS) receiver onboard or nearby the vehicle*, the location information indicates the location directly and the determination is made, for example, by recognizing or receiving the transmitted location information. In other exemplary methods and embodiments, the signal itself is used to determine or help determine a geographic location of the vehicle, for example, in a configuration where multiple receivers at different locations receive the transmitted signal and a location of the vehicle (e.g. of the transmitter on or near the vehicle that is sending the signals) is determined by *triangulation* using for example relative and/or absolute signal strengths and/or signal timing of the signal as received by the different receivers.

'471 Patent at 2:55–3:7 (emphasis added).

Defendant argues that Plaintiff agrees that location information is transmitted by a "monitoring system" because Plaintiff stated as follows in its opening brief: "The 'transmitting' performed *by the monitoring system* is actually a relay of coordinates sent from the GPS system." (Dkt. #54 at p. 18) (quoting Dkt. #48 at pp. 14–15). Plaintiff was referring, however, to "the

excerpt of the specification" cited by Defendant. (*See* Dkt. #48 at pp. 14–15). Thus, no concession or agreement is apparent as to the meaning of this disputed term.

On balance, Defendant's proposal of "the monitoring system in, on, or near the vehicle" should not be imported from the specification into the construction. *See Constant*, 848 F.2d at 1571; *see also Phillips*, 415 F.3d at 1323. Also of note, the claims of the '471 Patent are method claims, and Defendant has not shown any limitation in the claims requiring the step of "transmitting location coordinates" to be performed by any particular structure. *See Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1229 (Fed. Cir. 2016) ("All of the asserted claims are method claims, and the point of novelty resides with the steps of these methods, not with the machine that performs them."), *cert. denied*, 137 S. Ct. 2267 (2017); *cf. Microprocessor Enhancement Corp. v. Tex. Instruments Inc.*, 520 F.3d 1367, 1374 (Fed. Cir. 2008) ("A single patent may include claims directed to one or more of the classes of patentable subject matter, but no single claim may cover more than one subject matter class. *IPXL Holdings*[*, LLC v. Amazon.com, Inc.*], 430 F.3d [1377,] 1384 [(Fed. Cir. 2005)] (holding indefinite a claim covering both an apparatus and a method of using that apparatus).").

The Court therefore expressly rejects Defendant's proposed construction. No further construction is necessary. *See U.S. Surgical*, 103 F.3d at 1568 ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy."); *see also O2 Micro*, 521 F.3d at 1362 ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims."); *Summit 6*, 802 F.3d at 1291.

The Court accordingly construes **"transmitting location coordinates"** to have its **plain meaning**.

### F. "a Global Positioning System receiver co-located with the vehicle" (Claims 4 and 18)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "a Global Positioning System receiver co-located with the vehicle" | "a Global Positioning System receiver located on or nearby the vehicle"[2] |

(Dkt. #43, Exhibit A at p. 3; Dkt. #48 at p. 15; Dkt. #54 at pp. 16, 22; Dkt. #55 at p. 11).

Plaintiff argued that "the difference between 'co-located with' and 'located on or in' – for the purposes of two dependent claims – is not of sufficient materiality to merit the time and resources of the Court." (Dkt. #48 at p. 15). Alternatively, Plaintiff argued that "the defendant's proposal is unnecessary, and conflicts with embodiments disclosed in the '471 patent specification." (Dkt. #48 at p. 15).

Defendant responded that construction is necessary because "[t]he use of 'a Global Positioning System receiver co-located with the vehicle', in the context of the claim, does not clearly identify *where* the Global Positioning System receiver is located." (Dkt. #54 at p. 16).

Plaintiff replied: "While Plaintiff still contends that Defendant's proposal[] does nothing to actually clarify the disputed term, Plaintiff is willing to agree to the Defendant's modified proposal." (Dkt. #55 at p. 11).

Based on this agreement between the parties (*see id.*; *see also* Dkt. #56, Exhibit A at p. 3), the Court hereby construes **"a Global Positioning System receiver co-located with the vehicle"** to mean **"a Global Positioning System receiver located on or nearby the vehicle."**

---

[2] Defendant previously proposed: "a Global Positioning System receiver located on or *in* the vehicle." (Dkt. #43, Exhibit A at p. 3) (emphasis added).

## G. "specifications of the vehicle" (Claims 12 and 26)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "specifications of the vehicle" | "information about the vehicle's capabilities, as opposed to the vehicle's activity or mechanical or operational status" |

(Dkt. #43, Exhibit A at p. 3; Dkt. #48 at p. 17; Dkt. #54 at pp. 18, 22; Dkt. #55 at pp. 11–12; Dkt. #56, Exhibit A at p. 10).

Plaintiff argued that "construction of this single choice – appearing in a list of choices embedded in two dependent claims – is not of sufficient materiality to merit the time and resources of the Court." (Dkt. #48 at p. 17). Alternatively, Plaintiff argued that "defendant has simply restated plain language in a manner that makes the disputed term more – not less – difficult to understand." (Dkt. #48 at p. 17). Plaintiff also argued that the meaning of the disputed term is clear in light of context provided by disclosure in the specification. (Dkt. #48 at pp. 17–18) (citing '471 Patent at 3:36–48).

Defendant responded that its proposed construction "provides the required clarity" for this disputed term, which Defendant argued would otherwise be indefinite. (Dkt. #54 at p. 18).

Plaintiff replied that "Defendant's proposal does not clarify the disputed term – rather, it opens the term up to numerous ambiguities that were not present in the original language." (Dkt. #55 at p. 12).

At the September 26, 2017 hearing, the parties reached agreement that this term should be construed to mean "information about the vehicle, as opposed to the vehicle's activity or mechanical or operational status."

The Court therefore adopts the parties' agreement that **"specifications of the vehicle"** means **"information about the vehicle, as opposed to the vehicle's activity or mechanical or operational status."**

## H. "detecting at a landmark the presence of the vehicle" (Claim 15)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| "detecting a vehicle within a predetermined distance of a landmark"[3] | "detecting, by a device on, in, or at a landmark, that the vehicle is within a predetermined distance from the landmark" |

(Dkt. #43, Exhibit A at p. 4; Dkt. #48 at p. 18; Dkt. #54 at pp. 20, 22; Dkt. #55 at p. 12; Dkt. #56, Exhibit A at p. 7).

### 1. The Parties' Positions

Plaintiff argues: "The dispute here stems from the same improprieties in the defendant's proposal that permeate its previous proposals." (Dkt. #48 at p. 18). Plaintiff urges that "the defendant's proposal offers clarification where none is needed, with language that doesn't clarify." (Dkt. #48 at p. 19).

Defendant responds: "The use of 'detecting at the landmark the presence of a vehicle', in the context of the claim, does not identify *what* is doing the detecting, *where* the thing doing the detecting is located, or *when* the detecting occurs. Without clarification of the what, where, and when of the claimed detecting, step [E] is hopelessly indefinite." (Dkt. #54 at p. 20). Defendant argues that its proposal is "explicitly supported by the intrinsic evidence of the '471 Patent specification." (Dkt. #54 at p. 20) (citing '471 Patent at 3:21–28).

---

[3] In the parties' September 18, 2017 Joint Claim Construction Statement Per P.R. 4-5(d), Plaintiff's proposal for this disputed term is listed as "detecting at a landmark the presence of the vehicle." (Dkt. #56, Exhibit A at p. 7). At the September 26, 2017 hearing, however, Plaintiff confirmed that it is still advancing the construction that Plaintiff proposed in the parties' July 6, 2017 Joint Claim Construction Statement Per P.R. 4-3 (*see* Dkt. #43, Exhibit A at p. 4) and Plaintiff's opening brief (*see* Dkt. #48 at p. 18).

Plaintiff replies: "As noted in Plaintiff's [Opening] Brief, the extra language of the Defendant's proposal adds nothing substantive for one skilled in the art." (Dkt. #55 at p. 13).

### 2. Analysis

Claim 15 of the '471 Patent recites:

> **15.** A method for monitoring a vehicle, comprising:
> detecting movement or activation of the vehicle;
> transmitting a signal indicating movement or activation of the vehicle, to a control center;
> transmitting any received operator identification information to the control center;
> determining whether an operator identification was received within a time interval of the detected movement or activation of the vehicle;
> *detecting at a landmark the presence of the vehicle*; and
> transmitting data identifying the vehicle and a location of the landmark to the control center.

'471 Patent at 7:24–36 (emphasis added).

The parties have cited the following disclosure in the specification:

> In another exemplary embodiment, the vehicle can include an RFID tag or other machine readable passive or active information source or device which can be read by a *reader at the parking stall or other landmark*, and provide vehicle and/or operator information to the landmark which can then transmit some or all of this information in addition to information identifying or characterizing landmark [*sic*, the landmark], to the control center.

'471 Patent at 3:21–28 (emphasis added).

Substantially the same analysis applies here as for the above-discussed analogous term "detecting at the vehicle the presence of a landmark" in Claim 1 of the '471 Patent. The disputed term itself refers to "detecting *at* the landmark," so Defendant's proposal of "on, in, *or at*" is superfluous and would tend to confuse rather than clarify the scope of the claims. At the September 26, 2017 hearing, upon inquiry, Defendant had no objection to replacing "on, in, or at" with simply "at."

Nonetheless, Plaintiff acknowledged that "the presence of a vehicle at a landmark may be understood as a vehicle within a predetermined distance of that landmark." (Dkt. #48 at p. 20). Plaintiff also states that "one skilled in the field of the invention" "would understand that a device was utilized – and the landmark itself was not doing the detecting." (Dkt. #48 at p. 19). At the September 26, 2017 hearing, Plaintiff argued that the landmark could itself be a device, such as a tollway gantry. On balance, however, Defendant's proposal of "by a device at a landmark" is sufficiently clear in this regard and will assist the finder of fact in understanding the claim. *See TQP*, 2012 WL 1940849, at *2 (Bryson, J.) ("some construction of the disputed claim language will assist the jury to understand the claims").

The Court therefore construes **"detecting at a landmark the presence of the vehicle"** to mean **"detecting, by a device at a landmark, that the vehicle is within a predetermined distance from the landmark."**

## CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the patents-in-suit. The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury. Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury. Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

**IT IS SO ORDERED.**
 **SIGNED this 4th day of October, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE